UNITED STATES BANKRUPTCY COURT       **FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------x
In re:                              Case No. 24-11100 (PB)

JULIAN ENDER DE FLANDRES,         Chapter 7

       Debtor.
-------------------------------------------------x
ELLIOT JUSTIN,

          Plaintiff,              Adv. No. 24-04038 (PB)

      v.

JULIAN ENDER DE FLANDRES,

          Defendant.
-------------------------------------------------x


### **MODIFIED BENCH RULING GRANTING DEFENDANT'S MOTION TO DISMISS**


**Appearances:**

JULIAN ENDER DE FLANDRES
*Pro Se*

RACHAEL KIERYCH, ESQ.
*Counsel for Plaintiff*
305 Broadway
Floor 7
New York, NY 10007


**Hon. Philip Bentley**
**U.S. Bankruptcy Judge**

## Introduction[1]

This case raises an unusual issue: When a chapter 7 debtor has misrepresented his income and household size, and a creditor files a "false oath" non-dischargeability complaint under Bankruptcy Code § 727(a)(4)(A), can summary judgment dismissing the complaint be warranted on the ground that the misrepresentations, even if fraudulent, were not material to the bankruptcy? Such an outcome is rare, but in this case, the Court finds, it is appropriate.

The Debtor has been unemployed for almost three years, with no income of his own. During this time, the great bulk of his living expenses have been paid by his girlfriend, who has allowed him to live at her apartment without paying any portion of the rent or other household costs; the balance of his living expenses have been funded by occasional small cash contributions from his mother. In the schedules the Debtor filed with his chapter 7 petition, he reported his income as consisting only of the sums received from his mother, making no mention of his girlfriend's payments for their shared living expenses. In addition, he reported his household size as one—just himself, and not also his girlfriend. The Debtor's largest creditor filed this adversary proceeding, seeking a denial of the Debtor's discharge on the ground that his reporting of these matters constituted a "false oath" under Bankruptcy Code § 727(a)(4)(A). The Debtor, who is appearing *pro se* in this adversary proceeding, has moved for summary judgment.

The evidence before the Court suggests that the Debtor's reporting of these matters, while false, was not knowingly false or made with intent to deceive. But the Court is reluctant to grant summary judgment on that ground, particularly prior to the commencement of formal discovery, given how fact-intensive and credibility-dependent issues of intent can be. The Court therefore will not rule on the scienter issue, but instead will grant summary judgment on the sole ground that the Debtor's misstatements did not materially relate to his bankruptcy case.

---

[1] This decision expands upon and in some respects modifies the bench ruling that the Court read into the record on May 29, 2025.

The Court is well aware that, in the great majority of chapter 7 cases, a debtor's income and household size are highly material. Most obviously, any misrepresentation of those matters can result in a misapplication of the means test. But this case is unusual. For one thing, the Debtor is not subject to the means test, because his debts are principally business, rather than consumer, debts. In addition, because the Debtor has no income of his own—just the in-kind support provided by his girlfriend, plus occasional small cash contributions from his mother—there is no apparent prospect that conversion of this case to chapter 11 could result in any meaningful distribution to creditors.

For both of these reasons, the Debtor's misstatements of his income and his household size have no actual or potential bearing on the conduct of this bankruptcy case. These misstatements therefore are not material, and the Court will grant summary judgment dismissing the complaint.

### Facts Not Subject to Genuine Dispute[2]

The Debtor commenced this bankruptcy by filing a chapter 7 petition in June 2024. Along with his petition, he filed the required schedules and forms, including (of most relevance here) his statements of income and expenses on Schedules I and J and his statement of current monthly income on official form 122A. The chapter 7 trustee subsequently reported that this is a "no asset" case—that is, the Debtor has no non-exempt assets, and therefore no distribution will be made to creditors.

The Debtor has been unemployed, with no income of his own, since 2022. During this time, he has made efforts to find employment, and also to earn a living as an independent software developer, but he has had no success in either regard. The record provides no indication that this is about to change.

Since 2022, the Debtor's living expenses have been paid entirely by his girlfriend—Monica Santos, with whom he shares a one-bedroom apartment in Manhattan—and, to a much lesser

---

[2] These facts are taken from the declarations given by the Debtor, his mother and Monica Santos in support of this motion, as well as the declaration given by the Plaintiff's counsel.

extent, his mother. Ms. Santos' financial support has taken the form of in-kind, rather than cash, contributions. Specifically, Ms. Santos has not charged him for any portion of the amounts she has paid for rent and utilities, or for the food and household expenses she has purchased for the two of them. She has also paid for their shared entertainment expenses, including restaurants, concerts and occasional travel. The amounts she has paid on his behalf have totaled approximately $2,750 to $3,000 per month. In addition, to cover the Debtor's incidental cash needs, his mother has been making occasional cash payments to him, averaging approximately $270 per month, bringing his total monthly income to a little over $3,000. The Debtor's mother also paid his legal bills for this chapter 7 case, totaling about $2,800.

Ms. Santos is employed and earns a substantial salary—approximately $185,000—as a product designer at a tech start-up. However, her contributions to the Debtor's living expenses are entirely voluntary; there is no agreement obligating her to continue supporting him in any way. Moreover, it appears that her contributions could cease at any time. Her own finances are stretched thin, and according to both the Debtor and Ms. Santos, their relationship has been under strain and its future is uncertain.

The ability of the Debtor's mother to fund his cash needs going forward also appears to be uncertain. She is a retired U.S. Postal Service employee living in South Carolina on a fixed annual income of approximately $32,000. She has significant ongoing medical expenses, and although she recently sold her home, she intends to use the sale proceeds to fund her expected move to an assisted living facility.

In the schedules he filed with his chapter 7 petition, the Debtor made no mention of any of the payments Ms. Santos has been making to fund their shared living expenses. Instead, he reported his income as $193 per month—an amount that included monies he had received from his mother

but not the sums Ms. Santos had paid on his behalf.[3] His schedule of expenses, similarly, did not include any of the living expenses that Ms. Santos has paid. In addition, the Debtor reported the size of his household as one, rather than two—that is, just himself, and not also Ms. Santos.

The Debtor has primarily business, rather than consumer, debts. His largest debt by far is a $95,000 pre-petition default judgment obtained by Dr. Elliott Justin ("Plaintiff"), the plaintiff in this adversary proceeding. The judgment arose from the Debtor's personal guaranty of a business loan that the Plaintiff advanced in 2015 to a start-up company that by the Debtor co-founded. The Debtor's remaining debts total about $25,000. In his petition and schedules, the Debtor mistakenly checked the box stating that his debts were primarily consumer debts, but the Plaintiff does not dispute that the Debtor has primarily business debts.

In March 2025, the Debtor amended his petition and his schedules to clarify some of his prior statements and correct others. His amended filings did not modify either his reported income and expenses or his household size; instead, he added several explanatory statements, which disclosed the payments that Ms. Santos has been making on his behalf. He also corrected the erroneous statement in his initial filings that his debts were primarily consumer debts, stating that in fact his debts were primarily business debts.

### This Adversary Proceeding, and the Debtor's Motion to Dismiss

In December 2024, Dr. Justin filed this adversary proceeding. His complaint seeks a judgment denying the Debtor a discharge pursuant to Bankruptcy Code § 727(a)(4)(A), which provides that a discharge should be denied if the debtor "knowingly and fraudulently, in or in connection with the case, made a false oath or account."

The complaint alleges that the Debtor made a variety of fraudulent misstatements in his

---

[3] The Debtor has not explained the discrepancy between the $270 per month that his mother says she has been giving him on average and the $193 per month that he reported on his schedules. He has stated that his mother's *regular* payments to him have averaged only about $118 per month; thus, the discrepancy appears to relate to the amount of additional (irregular) payments she has made. In any event, Plaintiff does not take issue with this relatively minor discrepancy or claim that it reflects an intentional misrepresentation by the Debtor.

chapter 7 petition and his accompanying schedules. At oral argument, Plaintiff narrowed his claim to rest principally on the Debtor's alleged misreporting of his income and expenses and his household size. Specifically, Plaintiff alleges that the Debtor's schedules (i) failed to report as either income or expenses any of the payments Ms. Santos made on his behalf, and (ii) falsely stated that his household had only one member, rather than two. Plaintiff also continues to press several lesser allegations—namely, that the Debtor failed to report entertainment expenses that he supposedly incurred during a trip to Las Vegas with Ms. Santos, as well as a personal computer that he allegedly owned. The Plaintiff claims that the Debtor's reporting of each of these matters was false, fraudulent and material to this bankruptcy, thereby warranting a denial of his discharge.

In February 2025, the Debtor—who is appearing *pro se* in this adversary proceeding, despite having been represented by counsel when he filed his chapter 7 petition[4]—filed this motion, which seeks dismissal of the complaint on summary judgment grounds. In support of the motion, the Debtor filed three supporting declarations—by himself, his mother and Ms. Santos. The Plaintiff filed a single attorney declaration in opposition. Among other things, the Plaintiff invoked Fed. R. Civ. P. 56(d), contending that, to defend against the motion, he needed to take additional discovery—specifically, depositions of the Debtor, his mother and Ms. Santos. Plaintiff had already taken extensive informal document discovery and did not claim to need any additional documents.

The Court heard oral argument on the motion in April. At that hearing, the Court raised the

---

[4] This is not unusual. Many chapter 7 debtors retain counsel on a flat fee basis to prepare the initial filings and handle routine matters thereafter, with additional matters such as non-dischargeability suits to be covered on an hourly fee basis if needed. Some chapter 7 debtors, like the Debtor, cannot afford to pay such additional hourly fees and therefore, if a non-dischargeability suit is filed, may have no choice but to defend the suit on a *pro se* basis.

Fortunately, the Debtor has represented himself quite capably in this suit in most respects, although his unfamiliarity with the governing rules has led to occasional complications. For example, the Debtor filed his summary judgment motion in violation of Local Rule 7056-1, which requires the parties to request a pre-motion conference before filing such a motion. The Debtor's breach of that rule turned out to be of little moment, because the Plaintiff chose to file his summary judgment opposition papers in advance of the required pre-motion conference. The Court therefore proposed, and the parties agreed, to waive the requirement of such a conference.

issue of materiality and invited the parties to file supplemental briefing addressing that issue. On May 29, following the submission of that supplemental briefing, the Court issued its bench ruling granting the Debtor's motion. As noted, this decision expands upon, and in some respects modifies, the Court's bench ruling.

<u>Discussion</u>

### I. Governing Legal Standards

Bankruptcy Code § 727(a)(4)(A) provides that the court shall not grant a discharge to a debtor who "knowingly and fraudulently, in or in connection with the case, made a false oath or account." The basic elements governing a suit seeking denial of discharge under this provision are settled and not in dispute. The plaintiff must prove five elements: that (i) the debtor made a statement under oath; (ii) the statement was false; (iii) the debtor knew the statement was false; (iv) the debtor made the statement with the intent to deceive; and (v) the statement materially related to the bankruptcy case. *Allred v. Schimek*, 753 F. Supp. 3d 334, 343 (S.D.N.Y. 2024); *see also, e.g., In re Drummon,* 2025 WL 1327191, at *5 (S.D.N.Y. May 7, 2025). Because Code § 727 imposes "an extreme penalty for wrongdoing," it "must be construed strictly against those who object to the debtor's discharge and liberally against the bankrupt." *In re Cacioli*, 463 F.3d 229, 234 (2d Cir. 2006) (quoting *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996)).

The standards governing a summary judgment motion are also undisputed. Federal Rule of Civil Procedure 56(a), incorporated by Bankruptcy Rule 7056, provides that summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate that no genuine issue of material fact exists; an issue of fact is genuine if, based on the evidence presented, a reasonable jury could return a verdict for the non-moving party. *Overton v. New York State Division of Military and Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004). In assessing whether a

genuine issue of material fact exists, the Court must examine the evidence in the light most favorable to the non-moving party. *Lucente v. IBM*, 310 F.3d 243, 253 (2d Cir. 2002).

Under Fed. R. Civ. P. 56(d), also incorporated by Bankruptcy Rule 7056, the Court has discretion to deny or defer an otherwise supported motion for summary judgment and to permit discovery if the non-moving party "shows by affidavit that for specified reasons, it cannot present facts essential to justify its opposition to the motion." *Continental Casualty Co. v. Marshall Granger and Co.*, 921 F.Supp.2d 111, 126-27 (S.D.N.Y. 2013). However, "a party may not defeat a motion for summary judgment by merely restating conclusory allegations and amplifying them only with speculation about what discovery might uncover." *In re Enron Corp.*, 2006 WL 2400345, at *2 (Bankr. S.D.N.Y. 2006). A party's mere hope that further evidence may develop prior to trial is an insufficient basis upon which to justify the denial of a summary judgment motion. *Id.*

## II. Plaintiff's Claims

As noted, Plaintiff has narrowed the allegations of his complaint and now focuses principally on the Debtor's purported misstatements concerning his income, expenses and household size. In addition, Plaintiff alleges that the Debtor failed to report certain entertainment expenses and ownership of a laptop. The Court will address these matters in turn.[5]

### A.  The Debtor's Reporting of His Income and Expenses and His Household Size

The Court finds that the Debtor's failure to report Ms. Santos' payments on his income and expense statements rendered those statements false. In addition, the Debtor's reporting of his household size as one, rather than two, was also false. However, these false statements do not give rise to a claim under Bankruptcy Code § 727(a)(4)(A) because, on the undisputed record, the Debtor's reporting of these matters was not material to his bankruptcy. The Court therefore need

---

[5] As a threshold matter, it is undisputed that all of these alleged misstatements satisfy the first element of the governing five-part test, namely, that they were made under oath. All of the statements were made in the schedules the Debtor filed with his petition, which he signed under oath. *See, e.g., Allred*, 753 F. Supp. 3d at 343 (S.D.N.Y. 2024) (statements made in debtor's schedules are made "under oath" for purposes of Code § 727(a)(4)(A)).

not, and will not, decide whether summary judgment would be warranted on the additional ground that the Debtor's reporting of these two matters was not knowingly false or made with intent to deceive.[6]

### 1.  The Debtor's reporting of these matters was false

### a. The Debtor's income and expenses

As noted, the schedules the Debtor filed with his petition reported his income as $193 per month, an amount that reflected cash payments from his mother but omitted Ms. Santos' in-kind contributions—that is, her payment of his portion of their shared expenses for rent, utilities, and household expenses. The schedules made no mention of Ms. Santos' payments or of the rent, utilities, and household expenses she paid. The Court finds that these omissions rendered the Debtor's reporting of his income and expenses materially false.

The Bankruptcy Code requires a chapter 7 debtor to include in his reported income all regular contributions that any party makes to fund his household expenses. This is clear from the Code's definition of "current monthly income," which states that such income "includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents."

---

[6] The record contains no evidence, beyond the falsity of the statements themselves, that the Debtor knew these statements were false or made them with an intent to deceive, as the governing legal standard requires, *see Allred*, 753 F. Supp. 3d at 343. Moreover, given the immateriality of these statements to this bankruptcy, a well-counseled debtor would have had no motive to misrepresent these issues. *Cf. In re Smith & Wesson Holding Corp. Sec. Litig.*, 669 F.3d 68, 77 (1st Cir. 2012) ("If it is questionable whether a fact is material or its materiality is marginal, that tends to undercut the argument that defendants acted with the requisite intent or extreme recklessness in not disclosing the fact.") (cleaned up).

Nevertheless, the appropriateness of granting summary judgment on the scienter issue prior to the commencement of formal discovery is a close call. Plaintiff contends that he needs discovery to test the veracity of the Debtor's declaration, including his statement that he relied on the advice of his bankruptcy counsel, after full disclosure of the relevant facts, that his schedules were accurate. The need for such discovery is a plausible basis to deny or defer summary judgment under Fed. R. Civ. P. 56(d). The fact-intensive nature of issues of scienter further weighs against a grant of summary judgment. *See Smith & Wesson*, 669 F.3d at 77 ("Scienter is inherently a fact-intensive inquiry, and courts are normally cautious about granting summary judgment for the defense on this issue.") (cleaned up). The Court therefore declines to rule on this issue. Instead, with respect to the Debtor's reporting of his income, expenses and household size, the Court will enter summary judgment solely on the ground that those statements were not material to this bankruptcy.

11 U.S.C. § 101(10A)(B)(i); *see also* Official Form 122A-1, https://www.uscourts.gov/sites/default/files/form_b122a-1.pdf (last visited August 27, 2025) [permalink: https://perma.cc/W384-63YL] (providing that a debtor's disclosures must "[i]nclude regular contributions from an unmarried partner, members of [the debtor's] household, [the debtor's] dependents, parents, and roommates"). Notably, this definition of income includes not just amounts paid to the debtor, but also "amount[s] paid . . . on a regular basis for the household expenses of the debtor"—that is, in-kind contributions of the sort Ms. Santos has been making. And this makes perfect sense: If a domestic partner or anyone else writes a check directly to the debtor's landlord, the financial effect on the debtor is no different than if that person had written the check to the debtor himself.

The district court's decision in *Allred* is closely on point. There, as here, the chapter 7 debtor was financially supported by his domestic partner. As here, the debtor's schedules disclosed the cash payments he received each month but included no portion of the monthly rent and utilities payments his partner made for the apartment they shared. A creditor filed a non-dischargeability complaint under Bankruptcy Code § 727(a)(4)(A), alleging that the debtor fraudulently omitted these in-kind contributions, as well as other income, from his schedules to manipulate the means test. The bankruptcy court granted the debtor's motion to dismiss, and the district court reversed. The district court held:

> [A] portion of the monthly rent, utilities, and other expenses associated with running a household is attributable to keeping [the debtor] housed—literally part of *his* household expenses. As such, those expenses, despite being paid by [his domestic partner], are part of his CIM [i.e., current monthly income] (are income to him) for "means test" purposes and should have been disclosed in his BAPCPA Schedules.

*Allred*, 753 F. Supp. 3d at 345 (emphasis in original). The same conclusion applies here.

### b. The Debtor's household size

It is less clear that the Debtor's reporting of his household size as one, rather than two, was

false. The case law concerning the circumstances in which a party living with a debtor, such as a domestic partner, should be considered a member of the debtor's household is divided. Courts addressing this issue have adopted three different standards: a "heads on beds" approach, which includes as a household member each person living with the debtor; an "economic unit" approach, which includes each person who financially supports or is supported by the debtor, or whose finances are intermingled with the debtor's; and a "tax reporting" approach, which includes each person reported as a dependent on the debtor's tax return. *See generally Johnson v. Zimmer*, 686 F.3d 224, 232-42 (4th Cir. 2012) (evaluating each standard and adopting a modified version of the economic unit approach, under which the court treated persons partially supported by the debtor as "fractional" units).

While the parties have not briefed or argued the relative merits of these competing approaches, the Court concludes that the Debtor should have reported Ms. Santos as a member of his household. This is clearly the required result under two of the three approaches courts have adopted: the heads-on-beds approach (the Debtor and Ms. Santos live together), and the economic unit approach (Ms. Santos supports the Debtor financially). The Debtor argues that Ms. Santos is not a member of his household because his finances and hers are not commingled, and because she is not bound by any agreement obligating her to continue supporting him. But neither of these facts changes the outcome under either of these approaches. Ms. Santos is a member of the Debtor's household under the heads-on-beds approach, because she lived with him on the petition date. And she is a member of his household under the economic unit approach, because she supported him financially as of the petition date.

It is true that under the third approach adopted by some courts—the "tax reporting" approach—the result would be different. Under this approach, the Debtor's household would have only one member, since neither the Debtor nor Ms. Santos claims the other as a dependent on their tax returns. However, the Debtor has not asked the Court to adopt this approach, and a review of

the leading cases indicates that only a small minority of courts have done so. In addition, the Court finds the reasons articulated by the Fourth Circuit in *Johnson* for rejecting this approach to be persuasive. *See Johnson*, 686 F.3d at 238-39. For these reasons, and with the caveat that the statutory construction issues addressed in *Johnson* are complex and have not been briefed, the Court concludes that the Debtor's statement that his household had only one member was false.

### 2. The Debtor's reporting of these matters was not material to this bankruptcy

Under the governing five-part test, the Debtor's misstatements concerning his income, expenses, and household size do not warrant a denial of discharge under Bankruptcy Code § 727(a)(4)(A) unless, among other things, those false statements "materially related to the bankruptcy case." *Allred*, 753 F. Supp. 3d at 343.

The standards governing this requirement are well established:

A false statement or omission is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property. It is well settled in the Second Circuit that materiality does not require a showing that the creditors were prejudiced by the false statement.

Omissions that do not affect the value of the estate may nevertheless be material if they hinder the trustee's or creditor's ability to investigate the debtor's pre-bankruptcy dealings and financial condition, even if such an investigation would not have benefited creditors. Debtors are not permitted to pick and choose what information is worth disclosing because this would create an end-run around the strictly crafted system of bankruptcy administration.

*In re Gordon*, 535 B.R. 521, 538 (S.D.N.Y. 2015) (cleaned up); *see also Drummon,* 2025 WL 1327191, at *6. In short, while the false statement need not have an actual impact on the bankruptcy to be material, it must at least relate to matters that could potentially affect the case.

Given the breadth of this standard, dismissal of false oath claims on materiality grounds is relatively rare. *See In re Darnell*, 2025 WL 1165252, at *3 (Bankr. E.D. Mo. 2025) ("the materiality bar is a low one"). Nevertheless, courts have dismissed such claims when they have found that the debtor's false statements had no actual or potential bearing on the bankruptcy. *E.g.,*

*Darnell*, 2025 WL 1165252, at *2-6 (granting summary judgment dismissal of section 727(a)(4)(A) claim for lack of materiality; debtor's false statements about creditor's claim had no actual or potential impact on the case); *In re Lang Chin*, 617 B.R. 761, 767-69 (Bankr. E.D.N.Y. 2020) (same; debtor's false statement that he had not been suspended from the practice of law was immaterial); *In re Packer*, 520 B.R. 520, 531-34 (Bankr. E.D. Tex. 2014) (same; debtor's failure to list life insurance policy in schedules was immaterial).

Dismissal of false oath claims that rest on statements immaterial to the bankruptcy makes eminent sense. As the Second Circuit has emphasized, section 727 imposes "an extreme penalty for wrongdoing" and therefore "must be construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt." *Cacioli*, 463 F.3d at 234. To impose a penalty as harsh as denial of discharge on a debtor whose false statements had no actual or potential bearing on the bankruptcy would be excessively punitive. Moreover, this conclusion is reinforced when one considers Code § 727(a)(4)(A) in the broader context of section 727(a) as a whole. As Judge Brian Walsh noted in his thoughtful recent analysis of this issue, "[t]he grounds for denial of a discharge in Section 727(a) were 'included to prevent the debtor's abuse of the Bankruptcy Code,'" and for the most part, "these grounds address systemic risks to the bankruptcy system." *Darnell*, 2025 WL 1165252, at *5. False statements unrelated to the bankruptcy, even if fraudulent, do not rise to a comparable level.

To be sure, misstatements of income or household size by a chapter 7 debtor are material in the great majority of cases. Both income and household size are highly relevant to the means test, under which a debtor whose income exceeds the median income of same-sized households in his state is subject to a formula that can result in dismissal of the case as an "abuse" of chapter 7. *See* Bankruptcy Code § 707(b)(1), (2), (6) & (7).[7] Because a misrepresentation of the debtor's

---

[7] The means test formula measures the amount by which the debtor's current monthly income exceeds certain permitted expenses. *See* 11 U.S.C. § 707(b)(2). If the resulting net amount exceeds a specified threshold, the case is presumed to be an abuse of chapter 7, subject to dismissal unless the debtor can rebut that presumption. *See id.* § 707(b)(2) & (3).

income, expenses or household size usually has a direct impact on means test calculations, it is material for purposes of a 727(a)(4)(A) claim. *See, e.g., Allred*, 753 F. Supp. 3d at 346.

In this case, however, the Debtor is not subject to the means test. As noted above, it is undisputed that the Debtor has primarily business debts, not consumer debts, and as Bankruptcy Code § 707(b) expressly states, the means test applies only to "an individual debtor . . . whose debts are primarily consumer debts." *See* 11 U.S.C. § 707(b)(1). Consequently, for any misstatements the Debtor made about his income, expenses or household size to be material, they would need to relate to some other aspect of the bankruptcy. Plaintiff contends that they do: Had the Debtor accurately reported his income and expenses, he claims, the U.S. Trustee or a creditor— perhaps the Plaintiff himself— might have sought to convert this case from chapter 7 to chapter 11.

It is true that courts occasionally convert an individual debtor's chapter 7 case to chapter 11 pursuant to Bankruptcy Code § 706(b). But they only do so when conversion would benefit creditors or other parties in interest, such as when the debtor's income is high enough that creditors would likely receive a meaningful distribution under a chapter 11 plan. *See, e.g., In re Cook*, 599 B.R. 323, 330-33 (Bankr. W.D. Ark. 2019) (denying motion to convert individual debtor's chapter 7 case to chapter 11 where debtor's prospects for confirming a chapter 11 plan were doubtful; noting that "courts generally begin by deciding whether the debtor has sufficient disposable income to fund a chapter 11 plan."). It follows that, for misstatements of income by a chapter 7 debtor with primarily business debts to be material for section 727(a)(4)(A) purposes on this ground, there must be a genuine possibility that conversion might benefit creditors.

This was the case in *In re Ravasia*, 2021 WL 1511940 (9th Cir. B.A.P. 2021), the principal decision on which the Plaintiff relies. There*,* the bankruptcy court had denied a discharge under section 727(a)(4)(A) to two joint chapter 7 debtors, a husband and wife, on the ground that they had fraudulently understated their current income and expenses, and the Bankruptcy Appellate

14

Panel affirmed. The debtors argued that their misrepresentations were not material because, as in the present case, they had primarily business debts and therefore were not subject to the means test. The bankruptcy court and the BAP each rejected that argument, finding that the debtors' misrepresentations were material to the potential conversion of the case to chapter 11. Notably, this ruling rested on the testimony of the chapter 7 trustee and the U.S. Trustee that, had the debtors accurately reported their income and expenses, both trustees likely would have sought to convert the case to chapter 11 on the ground that a substantial distribution to creditors would result. *See id.*, 2021 WL 1511940, at *6-10.

The facts of this case are entirely different. The Debtor is unemployed and has no income of his own, and the record provides no indication that this is likely to change any time soon. His only means of support are the in-kind contributions he receives from Ms. Santos, plus the modest cash payments he receives from his mother. The Debtor's income from these two sources, totaling a little more than $3,000 per month, has been fully disclosed since March 2025, when the Debtor filed his amended schedules disclosing Ms. Santos' contributions. In the five months since then, no-one—including the Plaintiff—has moved to convert this bankruptcy to chapter 11 or suggested they have any intention of doing so.

This is not surprising. As noted, conversion to chapter 11 would be warranted only if it would yield concrete benefits, such as a meaningful distribution to creditors. In this case, conversion would serve no purpose. Most notably, there is no basis to expect that conversion would result in any distribution to creditors. Distributions to creditors in chapter 11 cases filed by individual debtors are generally made pursuant to plans of reorganization funded by the debtor's projected disposable income, as determined when the plan is confirmed. *See* Bankruptcy Code § 1129(a)(15) (individual debtor must fund plan with property of a value not less than five years of "projected disposable income," if a creditor objects to plan's failure to so provide); *see also id.* § 1325(b)(2) & (3) (defining "disposable income"); *id.* § 1329(a) (plan may be modified post-

confirmation to increase or reduce plan payments). Plaintiff has made no attempt to show that the Debtor would have any projected disposable income, or that the Debtor has any non-exempt assets that he could potentially contribute to fund a chapter 11 plan.

The Court's own review of the record confirms that the Debtor has no projected disposable income. Understanding why this is so is surprisingly complex, however, due to the extraordinarily complicated rules that Congress added to the Bankruptcy Code in 2005, when it adopted the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA").[8] Under those rules, in any chapter 13 or individual-debtor chapter 11 case, a multi-step process is required to calculate first the debtor's disposable income and then his projected disposable income.

The first step in this process is to calculate the Debtor's income—that is, his gross income, as distinct from his disposable income. In this case, the key point is that, even though the Court has determined that Ms. Santos is a member of the Debtor's household, her $185,000 annual income is not considered in the calculation of the Debtor's income; instead, only the payments she has been making to fund his living expenses are included. This is clear from Bankruptcy Code § 101(10A), which (as previously noted) provides that, unless the debtor and his spouse have filed a joint bankruptcy case, a spouse's income is not attributed to the debtor except to the extent "receive[d]" by the debtor, *see id.* § 101(10A)(A), or "paid . . . on a regular basis for the [debtor's] household expenses," *see id.* § 101(10A)(B). It follows that the income of a domestic partner, such as Ms. Santos, similarly is not included in the calculation of the Debtor's income, except to the

---

[8] Many commentators have questioned the suitability of such complex rules for bankruptcy chapters meant to provide relief for financially distressed, and often low-income, individuals. *See, e.g.,* Robert M. Lawless, Angela K. Littwin, Katherine M. Porter, John A.E. Pottow, Deborah K. Thorne & Elizabeth Warren, *Did Bankruptcy Reform Fail?*, 82 AM. BANKR. L.J. 349 (2008). Indeed, some scholars have even characterized the extreme complexity of the rules, and the resulting costs and burdens to all debtors, as a feature of the statute, not a bug—that is, as the product of a deliberate strategy by BAPCPA's proponents to drive down consumer bankruptcy filing rates across the board by increasing the costs and burdens borne by all such debtors. *See* Angela K. Littwin, *The Affordability Paradox*, 52 WM. & MARY L. REV. 1933, 1950-55 (2011) (diminished access to bankruptcy by all consumer debtors may have been a goal, not a side effect, of BAPCPA's procedural requirements); *see also* James J. White, *Abuse Prevention 2005*, 72 MO. L. REV. 863, 874 (2006) ("By raising the cost in hundreds of little ways," BAPCPA's proponents may have sought to "make bankruptcy unpalatable to many" potential filers).

extent regularly used to fund his living expenses. Thus, the Debtor's income consists only of the payments Ms. Santos makes on his behalf, plus the payments he receives from his mother. As discussed above, the total amount of those payments comes to a bit more than $3,000 per month, or almost $40,000 per year.

The second step in calculating the Debtor's disposable income is to determine whether he is an "above-median-income" or "below-median-income"debtor—that is, whether his annualized income falls above or below the median income for two-person households in New York State at the time he filed for bankruptcy. As just noted, the Debtor's income is about $40,000 per year, which is well below the applicable median income level. *See* U.S. Trustee Programs, *Census Bureau Median Family Income By Family Size* (Cases Filed Between May 15 and October 31, 2024, Inclusive) (median income of two-person households in New York State in June 2024 was $87,550),https://www.justice.gov/ust/eo/bapcpa/20240515/bci_data/median_income_table.htm) (last visited August 27, 2025) [permalink: https://perma.cc/KK35-GHZE].

Step # 3 is to determine the expenses the Debtor may deduct from his gross income to compute his disposable income. Because the Debtor's gross income is below median, more flexible expense rules apply than would if his income were above median. Specifically, the Debtor is allowed to deduct all reasonably necessary living expenses, rather than only those expenditures permitted under the Internal Revenue Service guidelines governing collection actions against delinquent taxpayers. *Compare* 11 U.S.C. § 1325(b)(2) ("disposable income" generally means current monthly income less "amounts reasonably necessary" to pay debtor's living expenses) *with id.* § 1325(b)(3) (notwithstanding § 1325(b)(2), debtors with above-median income can only deduct expenses to the extent permitted by Code § 707(b)(2)(A) & (B)); *see also id.* § 707(b)(2)(A)

& (B) (incorporating national and local expense limits set forth in IRS guidelines).[9] The Plaintiff has made no attempt to show that any of the Debtor's living expenses are unreasonably high, nor does anything in the record support such a conclusion. Consequently, because the Debtor has been spending his entire income on his living expenses, his disposable income—income less reasonably necessary living expenses—is zero.

The last step in this Byzantine process is to determine whether the Debtor's projected disposable income differs from his current disposable income. As the Supreme Court held in *Hamilton v. Lanning*, 560 U.S. 505 (2010), a debtor's projected disposable income is usually his current disposable income extended over the plan's full term; however, a bankruptcy court may adjust this calculation to account for "changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* at 524. Here, there has been no showing that either the Debtor's income or his expenses are about to change. Consequently, the Debtor's projected disposable income, like his current disposable income, is zero.

This finding provides ample ground to conclude that conversion of this case to chapter 11 would have served no purpose. But there is more: Even if a court were to deem the Debtor to have a small amount of disposable income (e.g., because some of his expenses are unreasonably high), that alone would not be sufficient to warrant conversion to chapter 11. The theoretical possibility of a distribution to creditors under a chapter 11 plan means nothing if such a plan is not feasible, and there is no basis to believe that the Debtor would have the ability to fund a chapter 11 plan that required any meaningful payments to creditors. As noted, the great bulk of the Debtor's deemed income consists of Ms. Santos' unreimbursed payments for their shared rent and other expenses. Forgiving the Debtor's share of those joint living expenses is one thing; making cash

---

[9] If the Debtor's income were above median, it would be necessary to consider whether any of his monthly expenses exceed the amounts allowed under the applicable IRS guidelines—e.g., whether his monthly rent and utility expenses exceed the monthly housing expenses permitted for debtors in two-person households in New York County as of June 2024. Any excess would be deemed disposable income, which he would potentially have to pay into a chapter 11 plan for the benefit of his creditors. The parties have not briefed, nor has the Court determined, whether the Debtor would have disposable income under such an approach.

payments into a plan to pay the Debtor's creditors is another thing altogether—and the record provides no basis to expect that Ms. Santos would be willing to make payments of the latter sort. Nor is there any indication in the record that the Debtor's mother, who lives on a modest fixed income and has significant ongoing medical expenses, would be either willing or able to fund a chapter 11 plan. For these reasons as well, conversion to chapter 11 has never been a realistic possibility in this case.

**B. The Debtor's Alleged Entertainment Expenses and Ownership of a Laptop**

The Plaintiff's allegations concerning the Debtor's purported entertainment expenses and ownership of a computer require little discussion. To the extent the complaint rests on these allegations, summary judgment is warranted on the ground that Plaintiff has presented no evidence that the Debtor's statements about either of these items was false.

Plaintiff contends that the Debtor failed to report certain expenses he allegedly incurred during a trip that he and Ms. Santos took to Las Vegas in 2023. But as the Debtor and Ms. Santos have explained in their respective declarations, Ms. Santos paid for these expenditures out of her personal funds. Although the Debtor charged these items on his credit card, he did so only because Ms. Santos had lost her card, and she reimbursed him by Venmo for the entire amount. This sworn explanation is credible and is supported by the documentary evidence annexed to the Debtor's and Ms. Santos' declarations. The Plaintiff has shown no reason to question this explanation, nor any reason why he should be allowed to take further discovery on this issue. *See Enron*, 2006 WL 2400345, at *2 ("speculation about what discovery might uncover" is not sufficient to defeat summary judgment).

The Plaintiff's claim that the Debtor owns a personal computer, which he failed to report, is equally unsupported. The contention rests on nothing more than the Plaintiff's assertion that it is not plausible that the Debtor, who has a background in software development and hopes to establish a career in that area, would not have a computer of his own. The Debtor's and Ms.

19

Santos's declarations put this conjecture to rest. As Ms. Santos' declaration states, she owns two personal computers (a desktop and a laptop), and she also uses a laptop provided by her employer; the Debtor does not own a PC but instead regularly uses her desktop computer with her permission. On this issue as well, the sworn explanation provided by the Debtor and Ms. Santos is credible, and the Plaintiff has shown no reason to question it nor any need to take further discovery.

### Conclusion

For these reasons, the Court will enter summary judgment dismissing the complaint.

Dated: September 9, 2025
   New York, New York

        /s/ Philip Bentley
        **Hon. Philip Bentley**
        **United States Bankruptcy Judge**